**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH KRUPA, | ) | CASE NO. 1:19-cv-01839 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| SUPPORT FOR YOU, LLC, *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |
| | ) | |

### I. Procedural History

On August 13, 2019, Plaintiff Sarah Krupa (Plaintiff) commenced an action against

Defendants Support for You, LLC and Mark Cain, wherein Plaintiff asserted the following

causes of action: (1) a violation of the Fair Labor Standards Act (FLSA) for allegedly failing to

compensate Plaintiff at one and one-half (1½) times her regular hourly rate for hours worked in

excess of forty (40) hours per week as well as a retaliation claim under the FLSA; (2) a violation

of the Ohio Civil Rights Act (OCRA) for failing to accommodate Plaintiff's disability and/or

termination for having an actual and/or perceived disability; and (3) interference with leave

requested pursuant to the Family Medical Leave Act (FMLA). (R. 1). Now pending is

Defendants' motion for summary judgment (R. 27), as well as Plaintiff's motion for partial

summary judgment. (R. 26).

### II. Summary of Key Facts

In his deposition, Defendant Cain stated that Support for You was barely operating and was

being phased out due to a lack of credentials from the State. (Cain Depo., R. 26-1, Tr. 9-10). He became involved with Support for You four years earlier in the summer of 2016 when he met Harvey Yager. (Cain Depo., R. 26-1; Tr. 11-12, 19). Yager held 100 percent ownership in Support for You as registered with the State, but Cain held 51 percent ownership of the business as a holding company and Yager 49 percent.[1] (Cain Depo., R. 26-1, Tr. 19; Krupa Depo., R. 26-2, Tr. 18-19). Cain stated he had little to do with the management of Support for You for the first few years, as Yager ran the day-to-day workings of the business and Plaintiff soon took over running the business after she was hired. (Cain Depo., R. 26-1, Tr. 20).

Plaintiff was hired in 2017 part-time to handle bookkeeping, and Cain interviewed her personally. (Cain Depo., R. 26-1, Tr. 24-26, 33; Krupa Depo., R. 26-2, Tr. 15-17). She quickly became a full-time employee within about a month, and Cain stated Plaintiff and he became "mutual management." (Cain Depo., R. 26-1, Tr. 26-27, 32 ). Cain indicated Plaintiff basically ran Support for You, and did nearly all the hiring and firing. (Cain Depo., R. 26-1, Tr. 30-32). Yager testified to the contrary, stating Plaintiff did not have the ability to hire or fire employees. (Yager Depo. R. 28-1, Tr. 32, 35, 43). Plaintiff also denied having any authority to hire or fire. (Krupa, R. 26-2, Tr. 29-30). Per Cain, Plaintiff also supervised employees. (Cain Depo., R. 26-1, Tr. 34). Plaintiff testified Cain stopped by the office almost daily. (Krupa Depo., R 26-2, Tr. 20, 34).

Plaintiff was compensated $20 per hour from the outset and that remained unchanged throughout her employment.[2] (Cain Depo., R. 26-1, Tr. 37-38; Yager Depo. R. 28-1, Tr. 26, 29;

---

[1]  Yager is a plaintiff in a separate lawsuit against Cain alleging mismanagement of Support For You and fraud. (Yager Depo. R. 28-1, Tr. 7-9).
[2]  Plaintiff indicated there were never any discussions about her becoming a salaried employee. (Krupa Depo., R. 26-2, Tr. 36).

Krupa Depo., R. 26-2, Tr. 22). Cain testified Plaintiff was not a salaried employee, but paid hourly. *Id*. A number of other employees were compensated with a salary rather than on an hourly basis. (Cain Depo., R. 26-1, Tr. 40; Yager Depo. R. 28-1, Tr. 36-37; Krupa Depo, R. 26-2, Tr. 30, 36). Cain indicated he did not want anybody working overtime, including Plaintiff. (Cain Depo., R. 26-1, Tr. 42). Plaintiff testified that she never heard Cain state that he did not want anyone working overtime, only that Cain did not want employees to be paid overtime. (Krupa Depo., R. 26-2, Tr. 38). Caine testified Plaintiff took the initiative to make sure employees stayed under forty-hours per week. (Cain Depo., R. 26-1, Tr. 43). Cain indicated he never told Plaintiff not to compensate her own hours above the forty-hour cap at less than time and a half, but rather that he told her that if she had to work overtime not to exceed 45-hours per week. (Cain Depo., R. 26-1, Tr. 48).

In discussions with the Department of Labor regarding an investigation of Support For You, Cain testified that an investigator agreed that Plaintiff was a supervisor. (Cain Depo., R. 26-1, Tr. 60-61).

Cain indicated he spoke to Plaintiff several times about knee replacement surgery, which came up from nearly the time she started working for Support For You. (Cain Depo., R. 26-1, Tr. 81). Cain testified that he stated it was not a problem, and that she ultimately requested time off work for the procedure. (Cain Depo., R. 26-1, Tr. 82-83). He indicated Plaintiff believed she would be off for four to six weeks, but that she wanted to work from home when needed. (Cain Depo., R. 26-1, Tr. 83). Yager testified that Plaintiff discussed having surgery with them, and they approved her time off unpaid.[3]  (Yager Depo., R. 28-1, Tr. 55, 74; Krupa Depo., R. 26-2, Tr.

---

[3]  Plaintiff ultimately had a second knee surgery in September of 2018 on her other knee. (Krupa Depo., R. 26-2, Tr. 11). She testified that Defendants were not aware a second surgery was on

71-72, 75). Plaintiff testified as follows:

> All along leading up to it, it was completely understood that I would leave, have my surgery.
>
> We said probably for that first week I would not do any work, but by the end of the first week after the surgery, I would be doing the billing and gathering the payroll reports to submit to the payroll company.
>
> Jennifer Brink was going to gather all the bills that came in, come to my house. We would draw up the checks. She would take them back to Mark Cain to sign, and that was the process that was going to transpire.
>
> I got all of the financial records together for 2017 and the first quarter of 2018 and gave them to Bill Young,[4] physically handed them to him along with a flash drive for the computer so that they had everything they needed to process the taxes, and the whole first quarter was done.
>
> We got everything tied up and really buttoned down so that I could have that week, and then I took my -- I was given permission to take the computer home, and I was going to work from home for a couple of weeks.
>
> And then I was going to come back to the office, and they were probably going to have me sit downstairs because I might not be able to tackle the stairs just yet.

(Krupa Depo., R. 26-2, Tr. 69-70). Plaintiff testified that she anticipated she would only need to work from home for one to two weeks before returning to the office. (Krupa Depo., R. 26-2, Tr. 72, 97).

Cain indicated he wanted Plaintiff to turn over the computer before her surgery so another employee could handle billing or payroll. (Cain Depo., R. 26-1, Tr. 84). Cain testified that he did not approve of Plaintiff removing the computer from the work premises, though Yager and Plaintiff testified that she was permitted to go home with the computer. (Cain Depo., R. 26-1, Tr. 85; Yager Depo. R. 28-1, Tr. 56; Krupa Depo., R. 26-2, Tr. 71).

---

the horizon, as normally a second knee surgery is not performed for at least a year. *Id*. at Tr. 96.
[4] Bill Young was the accountant for Support For You. (Cain Depo., R. 26-1, Tr. 51-52; Krupa Depo., R. 26-2, Tr. 70).

Plaintiff stated that the day after her surgery, she informed Cain and Yager that there was not enough money in the company bank account to cover payroll. (Krupa Depo., R. 26-2, Tr. 76). Cain indicated he received a call from Plaintiff the day of or the day after her surgery informing him that the company was $4,000 to $5,000 short for payroll. (Cain Depo., R. 26-1, Tr. 88). Yager testified that Plaintiff had warned them by email and text that there was going to be a shortfall. (Yager Depo., R. 28-1, Tr. 57-59). Cain indicated this was the fourth or fifth occurrence of a payroll shortfall. (Cain Depo., R. 26-1, Tr. 90-91). Yager testified that shortfalls were more common before Plaintiff was hired and that he recalled only two shortfalls since her hiring. (Yager Depo., R. 28-1, Tr. 57). Cain spoke to Plaintiff by phone the following day in the presence of Yager and another employee, Mike Hall. (Cain Depo., R. 26-1, Tr. 93). Yager identified the same individuals were present. (Yager Depo., R. 28-1, Tr. 57).

Caine denied terminating Plaintiff's employment during the May 18, 2018, telephone call. (Cain Depo., R. 26-1, Tr. 94-95). Yager testified to the contrary, indicating that Caine had stated "you're done" to Plaintiff, which Yager understood as Cain firing Plaintiff. (Yager Depo., R. 28-1, Tr. 60-61, 84). Plaintiff also considered herself fired after the conversation with Caine on May 18, 2018. (Krupa Depo., R. 26-2, Tr. 10-11). She testified as follows:

> He was livid that there wasn't any money for payroll. He wanted the work computer.
>
> I explained to him it wouldn't do him any good to have the work computer. That wasn't going to put money in the bank. He didn't know how to read QuickBooks. He didn't know how to read the report. I tried to explain to him why we were short on payroll. He was just screaming at me. He wanted the code to my house so he could come to my home to get the computer. He said I was done, "You're fired. I want your computer. I want it now. Give me the code to your house. I will go get it."
>
> And I said, "Absolutely not. I will have my husband bring it to you."

(Krupa Depo., R. 26-2, Tr. 79-80). Plaintiff did not recall Cain being upset about anything else on the call besides the payroll shortfall and wanting the computer back. *Id*. at Tr. 82. She also testified that she put in no requests related to medical leave during the May 18, 2018 telephone call. *Id*. at Tr. 98.

Yager also testified that Caine had indicated there was a mismanagement of funds. (Yager Depo., R. 28-1, Tr. 61). Cain did not recall accusing Plaintiff of mismanaging funds. (Cain Depo., R. 26-1, Tr. 90). Yager stated that, although Cain was not sure, Cain suspected Plaintiff wrote unauthorized checks or funneled money out other ways. *Id*. Yager also stated that Plaintiff denied the accusations made during the telephone call and assured them the computer would be returned as soon as possible.[5] *Id*.

The computer was returned the following day, and Cain indicates everyone was anticipating Plaintiff's return, but that she never showed up for work. (Cain Depo., R. 26-1, Tr. 99-101, 103). Yager testified that he knew he would suddenly be working longer hours and that "it was clear after that phone call, that we were moving on without Sarah." (Yager Depo., R. 28-1, Tr. 63-64). Yager testified that he heard Caine say to other employees several times that "we had to get rid of" Plaintiff. (Yager Depo., R. 28-1, Tr. 65). Yager had also indicated that Caine had previously mentioned or implied that he believed there was some mismanagement of money happening in the business and that he suspected it was coming from Plaintiff and termination was a possibility. (Yager Depo., R. 28-1, Tr. 86).

Plaintiff testified that months *after* her alleged termination on May 18, 2018, either in the late summer or early fall of 2018, she reported Support For You to the Department of Labor for

---

[5] Yager disputed that anyone could write unauthorized checks, as only Caine was able to sign checks on behalf of the company. (Yager Depo. R. 28-1, Tr. 53).

failure to pay overtime. (Krupa Depo., R. 26-2, Tr. 48).

### III. Summary Judgment Standard

Summary judgment is appropriate only if the moving party demonstrates there is no genuine dispute of material fact on an issue that would entitle the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the non-movant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is only genuine, however, if a reasonable jury could resolve the dispute and return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. Law and Analysis

#### A. FLSA Claim

In Count One, Plaintiff claims a violation of the FLSA stemming from Defendants' alleged failure to pay overtime. (R. 1, PageID# 5). The FLSA requires employers to pay their employees overtime for work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1). However, this provision does not apply to individuals "employed in a bona fide executive, administrative, or professional capacity …." 29 U.S.C. § 213(a)(1). Defendants argue that Plaintiff is an exempt employee, because she was an "executive" and/or "administrative" employee. A bona fide executive employee must be: (1) paid on a salary basis; (2) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" (3) "[w]ho customarily and regularly directs the work of two

or more other employees;" and (4) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). An employee working in a "bona fide administrative capacity" must be: (1) paid on a salary or fee basis;[6] (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). For both executive and administrative employees, "salary basis" is defined as an employee who "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is *not subject to reduction* because of variations in the quality or *quantity* of the work performed." 29 C.F.R. § 541.602 (emphasis added).[7]

As explained by the Sixth Circuit Court of Appeals, in order to "establish an overtime exemption for executive, administrative or professional employees, 29 U.S.C. § 213(a)(1), an employer must satisfy three tests: 'a (1) duties test; (2) salary level test; and (3) salary basis

---

[6] "Administrative and professional employees may be paid on a fee basis, rather than on a salary basis. An employee will be considered to be paid on a 'fee basis' within the meaning of these regulations if the employee is paid an agreed sum for a single job regardless of the time required for its completion." 29 C.F.R. § 541.605. No party has suggested Plaintiff was compensated on a fee basis, nor does the evidence of record appear to support such a conclusion.

[7] It is irrelevant that Defendants may have paid "straight-time" overtime compensation, as "additional compensation at the exempt employee's 'hourly' rate for hours worked beyond 40 in a work week—does not violate the salary-basis test." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006). The regulations only prohibit a reduction in salary due to the quantity of the work performed. *Id.* (citing 29 C.F.R. § 541.118(b)).

test,[.]'"" *Acs v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir. 2006) (*citing Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 779 (6th Cir. 2001)); *see also Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988, 992 (6th Cir. 2016) (an employer must establish all three elements of the administrative employee defense in order to prevail and the burden is on the employer to prove each element of the exemption).

Defendants' claim that Plaintiff was an exempt executive or administrative employee fails the salary basis test. The testimony is uncontroverted that Plaintiff was compensated on an hourly basis—$20 per hour from the date of her hire and that remained unchanged. (Cain Depo., R. 26-1, Tr. 37-38; Yager Depo. R. 28-1, Tr. 26, 29; Krupa Depo., R. 26-2, Tr. 22). While Support For You had a number of other employees who were compensated on a salary basis, Plaintiff was not among them. (Cain Depo., R. 26-1, Tr. 40; Yager Depo. R. 28-1, Tr. 36-37; Krupa Depo, R. 26-2, Tr. 30, 36). While genuine issues of material fact might exist regarding whether Plaintiff's duties are akin to that of a managerial or administrative employee, Defendants have the burden of satisfying *all three elements* in order to prove an exemption applies—and they have failed to do so.

If it is Defendant's position that Plaintiff was actually receiving the equivalent of a salary that was simply defined at an hourly level of $20 per hour, it is Defendants' burden to demonstrate as much. For example, Defendants have not pointed to any evidence suggesting that Plaintiff was paid at least $800 per week ($20 per hour for 40 hours) even if she worked less than 40 hour per week. Given the unequivocal testimony of Plaintiff, Cain, and Yager that Plaintiff was compensated on an hourly basis, Defendants have not identified any evidence that would overcome the inherent import of their testimony—that Plaintiff was not a salaried employee. Therefore, Plaintiff is entitled to partial summary judgment on her claim that she was an hourly

employee. Nevertheless, genuine issues of material fact remain as to the number of hours worked, and whether she was permitted to work in excess of forty hours per week.

In the Complaint, Plaintiff raised a second FLSA claim, alleging that "Defendants terminated [her] employment in retaliation for the complaints [she] made regarding Defendants' failure to pay overtime compensation to Plaintiff and other employees in violation of the FLSA, 29 USC §215." (R. 1 at ¶43, PageID# 6). Defendants have asserted they are entitled to summary judgment on such a claim because Plaintiff did not lodge any complaints or reports with the Department of Labor until well after May 18, 2018—the alleged date of her termination. (R. 27, PageID# 261).

Defendants are correct—there is no dispute that Plaintiff did not lodge overtime complaints with the Department of Labor until months *after* her employment ended with Support For You. (Krupa Depo., R. 26-2, Tr. 48). Nevertheless, in her brief in opposition, Plaintiff cites her own deposition testimony, asserting that she was instructed not to pay overtime when processing payroll, that Cain was upset the one-time she did pay overtime to a single employee, and that she expressed her opinion that Support For You was required to pay overtime. (R. 28, PageID# 371) (citing Krupa Depo., R. 26-2, Tr. 38-39, 47).

Under 29 U.S.C. § 215(a)(3), it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, … or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." Plaintiff's testimony can, at most, be construed as expressing an opinion to Defendant Cain that Support For You earned sufficient revenue that it was obligated to pay overtime. There is some authority suggesting that internal complaints do not qualify under

FLSA.[8] Nevertheless, the Sixth Circuit has described such a position as "clearly erroneous," finding that informal complaints are sufficient. *See, e.g., EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992). "The Sixth Circuit has consistently interpreted an informal complaint to management regarding working conditions to constitute a "filed complaint" under Section 215(a)(3)." *Montano-Perez v. Durrett Cheese Sales*, 666 F. Supp. 2d 894, 901 (M.D. Tenn. 2009) (citing *Moore v. Freeman*, 355 F.3d 558, 562 (6th 2004) & *Romeo Community Schools*, 976 F.2d at 989).

Thus, Plaintiff's FLSA retaliation claim is not defeated merely because Plaintiff did not lodge a formal complaint with the Department of Labor until *after* her alleged termination. Nevertheless, she has not identified any evidence she made even an informal "complaint" to her employer. The deposition testimony cited in Plaintiff's brief suggesting she made a complaint reveals the following exchange:

> Q:    Did you ever express an opinion as to when someone should be paid overtime or when someone should not be paid overtime in your capacity as a bookkeeper for Support For You?
>
> A.    I'm sure, yes. Yes. Yes, I explained to Mark [Cain] that Leland said that we made X amount of dollars and we didn't need to pay overtime. I expressed that, no, we're making X amount of dollars over the 300,000 or 150,000. We have to pay overtime. Yes, I expressed that, if that's what you mean.

(Krupa Depo., R. 26-2, Tr. 47).

The Supreme Court has expressed that "the phrase 'filed any complaint' contemplates some

---

[8] *See, e.g., Bell-Holcombe v. Ki, LLC*, 582 F. Supp. 2d 761, 764 (E.D. Va. 2008) ("Because 'filing' a complaint or 'instituting' a proceeding under FLSA contemplates some formal or official procedure, an internal complaint does not initiate protection of the statute.") (citing *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 364 (4th Cir. 2000) (finding that FLSA "prohibits retaliation for testimony given or about to be given but not for an employee's voicing of a position on working conditions in opposition to an employer."))

degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14, 131 S. Ct. 1325, 1334, 179 L. Ed. 2d 379 (2011) (while recognizing a complaint could be oral, the Court observed that "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.")

It is not at all evident from any evidence cited by Plaintiff that her statement was intended as a complaint rather than advice. In fact, the Sixth Circuit has held that a plaintiff's alleged FLSA complaints, which "were made in the course of performance of human resource job duties assigned to her and undertaken for the purpose of protecting the interests of the employer," did "not constitute protected activity under § 215(a)(3)." *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 Fed. App'x 524, 530 (6th Cir. 2011). The *Pettit* court stated:

> Under FLSA retaliation law, there is a legally cognizable distinction between the performance of job duties and the assertion of one's own FLSA rights or the rights of others. For an employee specifically tasked with personnel or human resources duties, dealing with FLSA compliance is part of the job, to be undertaken with the interests of the employing company in mind. An assertion of FLSA rights, on the other hand, will normally be specific to one or more employee(s) or a class of employees and will usually be made in the interests of that employee, group or class of employees and, thus, may be adverse to the employer's interests.

*Pettit*, 429 Fed. App'x at 530-531.

Plaintiff offering her professional opinion as a bookkeeper to her employer, under the circumstances described, given the above authority, does not constitute a complaint even under the most generous definition. Her deposition testimony cannot reasonably be construed, even in

the light most favorable to Plaintiff as the non-moving party, as unequivocally asserting either her own right to overtime or the right of other employees to overtime. Plaintiff was simply voicing an opinion as to whether Support For You was obligated to pay overtime similarly to the plaintiff in *Pettit*. Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's FLSA retaliation claim. However, as explained above, Plaintiff's FLSA overtime claim remains.

**B. FMLA Claim**

Plaintiff argues that her alleged termination gives rise to a cause of action under the FMLA, as she was terminated while on FMLA leave. The Sixth Circuit has held that "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007)). To establish a *prima facie* case of FMLA retaliation, Plaintiff must show that: (1) she was engaged in an activity protected by the FMLA; (2) her employer was aware that she was exercising her rights under the FMLA; (3) the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald,* 667 F.3d at 761 (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). Defendants have asserted that Plaintiff's termination was wholly unrelated to her taking leave so she could have knee surgery, essentially challenging the fourth prong of a *prima facie* case—a causal connection between Plaintiff's termination[9] and her leave to undergo and recover from knee surgery. (R. 31, PageID# 448).

---

[9] The court recognizes that whether Plaintiff was terminated or quit is the subject of a factual dispute. Nevertheless, Plaintiff has identified sufficient evidence of record creating a genuine

The evidence is uncontroverted that Defendants approved of Plaintiff taking leave for her knee surgery, even if it was not specifically discussed in terms of FMLA leave. (Cain Depo., R. 26-1, Tr. 81-83; Yager Depo., R. 28-1, Tr. 55, 74). As noted in the summary of the facts above, Plaintiff stated that all along, "it was completely understood that I would leave, have my surgery," "probably for that first week I would not do any work," and that afterwards she would work from home. (Krupa Depo., R. 26-2, Tr. 69). Plaintiff even stated that an arrangement had been put into place where another employee "was going to gather all the bills that came in, come to my house. We would draw up the checks. She would take them back to Mark Cain to sign, and that was the process that was going to transpire." *Id*.

Therefore, the dispositive issue is whether Plaintiff was terminated for exercising her right to FMLA leave. Defendants contend in their motion for summary judgment that Plaintiff's termination "revolved solely around the issue of missing funds and would have had nothing to do with any alleged disability or any alleged complaints Krupa may have made about wages or other issues." (R. 27, PageID# 254). In their reply, Defendants reiterate their position that Plaintiff's FMLA claim is not viable because "based on Plaintiff's own testimony, her alleged termination had nothing to do with the leave she took or the surgery." (R. 31, PageID# 448). Plaintiff counters that "[b]y terminating Plaintiff's employment the day after her surgery, Defendants effectively denied Plaintiff the leave she was entitled." (R. 28, PageID# 368).

Plaintiff cites no authority suggesting that simply terminating an individual while on FMLA leave is sufficient evidence to prove an FMLA claim or to withstand summary judgment. As stated above, not only does an employer have to take an adverse action against an employee who

---

issue of material fact as to whether she was terminated, including the testimony of Yager, Defendant Support For You's minority owner.

utilized or requested FMLA leave, but there must be a "causal connection" between the FMLA leave and the adverse employment action. *Donald,* 667 F.3d at 761. Assuming that Plaintiff was indeed terminated on May 18, 2018, the court agrees with Defendants that Plaintiff has offered no evidence that her termination had any connection to her FMLA leave. In her deposition, Plaintiff stated that Defendant Cain "was livid that there wasn't any money for payroll. He wanted the work computer." (Krupa Depo., R. 26-2, Tr. 79-80). She further could not recall Cain being upset about anything else on the call besides the payroll shortfall and wanting the computer back. *Id*. at Tr. 82. Nor did Plaintiff make any additional requests related to medical leave during the May 18, 2018 telephone call. *Id*. at Tr. 98.

"[A]cute temporal proximity standing alone, in some rare cases, can support an inference of causal connection." *Nascimento v. Univ. of Cincinnati*, No. 1:08-CV-326, 2010 WL 3037124, at *7 (S.D. Ohio Aug. 2, 2010) (citing *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 524–525 (6th Cir. 2008) (noting that when greater time has elapsed between the two, temporal proximity coupled with other indicia of retaliatory conduct may support the causal-connection prong); *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012) (agreeing with the district court that the nearness in time between the plaintiff's return from FMLA leave and his termination three weeks after his reinstatement and less than two months after he first notified his employer of his medical leave suffices "in these circumstances" to meet the low threshold of proof necessary to establish a prima facie case of retaliatory discharge."); *cf. Evans v. Prospect Airport Servs., Inc.*, 286 Fed. App'x 889, 895 (6th Cir. 2008) ("Generally, mere temporal proximity between an assertion of Title VII rights and a materially adverse action without other indicia of retaliatory conduct is not sufficient to establish the causal connection element of a retaliation claim.")

This is not the rare case where temporal proximity alone is sufficient to establish a *prima facie* case of FMLA interference or retaliation. The court has reviewed the depositions thoroughly, especially the deposition of Plaintiff. It is clear that Defendants, particularly Defendant Cain, were upset about the payroll shortfall—a shortfall that Plaintiff herself concedes she did not bring to her employer's attention until after her surgery. (Krupa Depo., R. 26-2, Tr. 76; Cain Depo., R. 26-1, Tr. 88; Yager Depo., R. 28-1, Tr. 57-59). The depositions also indicate that Cain suspected Plaintiff was mismanaging the business's finances. (Yager Depo., R. 28-1, Tr. 86). Simply put, Plaintiff has not drawn the court's attention to any indicia of retaliatory conduct beyond the timing of the termination. Under the circumstances of this case, Plaintiff's termination the day after her surgery is entirely consistent with the evidence that she brought the payroll shortfall to Defendants' attention that same day. There is simply no evidence presented that Plaintiff was terminated for any other reason than the perception that she mismanaged the company's funds.[10]

Therefore, the court grants Defendants' motion for summary judgment as it relates to the FMLA interference claim asserted in Count Three.

**C.  Ohio Civil Rights Act Claim (O.R.C. § 4112.02)**

Defendants move for summary judgment with respect to Plaintiff's claim in Count Two that she was not offered a reasonable accommodation for her disability or that she was terminated for being disabled. Specifically, Defendants have argued that Plaintiff cannot demonstrate that she

---

[10]  Although Plaintiff may understandably feel particularly aggrieved if she was not actually responsible for the payroll shortfall, it is immaterial whether or not she bears any culpability for said shortfall. Rather, it is Defendants' motivation for the adverse employment action that matters. Without a causal connection between the FMLA leave and her termination, her FMLA interference claim is not viable.

has a handicap and/or a disability; and, furthermore, that she cannot demonstrate that an adverse employment action was taken by Defendants because she was disabled. (R. 27, PageID# 263-266).

Defendants assert that Plaintiff cannot establish a *prima facie* case of disability discrimination under either Ohio or federal law. (R. 27, PageID# 261).

> To establish a prima facie case of handicap discrimination under R.C. 4112.02(A), the party seeking relief must establish "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204, citing *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 25 OBR 331, 496 N.E.2d 478. The Ohio Supreme Court has held that Ohio courts may look to cases and regulations interpreting the American with Disabilities Act ("ADA") for guidance in interpreting Ohio's anti-discrimination statutes. Id. at 573, 697 N.E.2d 204.

*DeBolt v. Eastman Kodak Co.*, 2001-Ohio-3996 at ¶39, 146 Ohio App. 3d 474, 485–86, 766 N.E.2d 1040, 1049 (Ohio Ct. App. 2001).

Plaintiff's brief in opposition does not directly address Defendants' argument that Plaintiff failed to meet the burden of a *prima facie* case of disability discrimination. Instead, Plaintiff argues that Defendants failed to accommodate her disability, and that a somewhat different standard applies to failure-to-accommodate claims. (R. 28, PageID# 371-374). To prevail on a failure to accommodate claim under the ADA, a plaintiff must show: "(1) she has a disability; (2) she was qualified for the job; and (3) she either was denied a reasonable accommodation for her disability or was subject to an adverse employment decision that was made solely because of her disability." *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996).

To satisfy the first element, Plaintiff must demonstrate that she is disabled. O.R.C. §

4112.01(A)(13) defines disability as a "physical or mental impairment that substantially limits[11] one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

Presuming for the sake of argument, without deciding the issue, that Plaintiff's need for knee surgery, without more, constitutes a disability, Plaintiff's claim still fails because she cannot demonstrate she either was denied a reasonable accommodation for her disability or was subject to an adverse employment decision that was made because of her disability. Plaintiff points to no evidence that she was denied a reasonable accommodation for her disability. The evidence recited above in this opinion shows that Plaintiff and her employer discussed her need for leave to have knee surgery and to recover therefrom, that Plaintiff herself believed she would only need to work from home one or two weeks before she could return to the office, and that Defendants would allow her to work on the first floor of the employer's place of business because she may be unable to use the stairs.

As stated by another court in this circuit, "[t]he ADA only requires an employer to make

---

[11] "The term 'substantially limits' is not defined in the Ohio statutes or regulations, but it is defined by federal regulations. Under federal regulations, the term 'substantially limit[ed]' means '[u]nable to perform a major life activity that the average person in the general population can perform,' or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.' 29 C.F.R. §§ 1630.2(j)(1)(i) and (ii) (2010). The 'substantially limits' analysis requires an individualized determination as to what effect the claimed impairment has on the life of the individual. *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). The recent amendments to the ADA discourage strict interpretation of the Act's terms and instruct the courts to construe the term 'disability' broadly. *Verhoff v. Time Warner Cable*, 299 Fed. Appx. 488, 492 n. 2 (6th Cir. 2008); 42 U.S.C. § 12102(4)." *Bare v. Fed. Exp. Corp.*, 886 F. Supp. 2d 600, 609–10 (N.D. Ohio 2012) (Lioi, J.).

'reasonable accommodations to the known . . . limitations of an otherwise qualified individual with a disability' where such an accommodation does not cause the employer 'undue hardship.'" *Land v. S. States Coop., Inc.*, No. 15-cv-83-JMH, 2016 U.S. Dist. LEXIS 122183, at *23-24 (E.D. Ky. Sep. 9, 2016) (quoting 42 U.S.C. § 12112(b)(5)). The *Land* decision further explained that "[e]mployers are not required to handle accommodation requests and discussions perfectly, only reasonably and in good faith." *Id.* ("When failure-to-accommodate is at issue, the employee bears the initial burden of 'proposing' an accommodation and showing that it is 'objectively reasonable.'") (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862 (6th Cir. 2007)); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)).

> "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3) (2010). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* Both parties must participate in this process and do so in good faith. *Kleiber*, 485 F.3d at 871.

*Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). The various depositions make clear that Defendants and Plaintiff discussed how Plaintiff's leave would be handled and arrived at a mutually satisfactory arrangement. Thus, no genuine issue of material fact remains whether reasonable accommodations were made.

Plaintiff appears to believe that because this arrangement did not go into effect due to her intervening termination, a *prima facie* case of failure-to-accommodate has been established. However, her termination, standing alone, does not demonstrate a failure to accommodate. While Plaintiff could maintain a failure to accommodate claim by demonstrating that she suffered an adverse employment decision that was made because of her disability, that argument is redundant of her FMLA claim. As decided above, Plaintiff has not drawn the court's attention to

any evidence that her termination was related to her need for knee surgery and time-off for recuperation afterwards. All evidence cited by the parties points to Plaintiff's termination as being occasioned solely due to Defendants' perception that she mismanaged the company's funds and was responsible for a payroll shortfall, regardless of whether or not that perception was accurate.

Plaintiff contends that it is "splitting hairs to suggest that Defendant Cain terminated Ms. Krupa because of the payroll error as opposed to her request for time off for surgery. The reality is that Defendant Cain terminated Plaintiff because an error was discovered while she was off work and she was unable to fix it." (R. 28, PageID# 374). However, Plaintiff points to no evidence that she was terminated because she was unavailable to fix the problem. Plaintiff in fact testified that there was no way of fixing the payroll shortfall, because Support For You simply did not have sufficient funds in its account to cover payroll. (Krupa Depo., R. 26-2, Tr. 79-80). Even construing the evidence in the light most favorable to Plaintiff, all the evidence points to Plaintiff being terminated because Defendants perceived her to be at fault for creating the payroll shortfall—not because she was on leave or was perceived as disabled.

Defendants' motion for summary judgment is granted with respect to Count Two of the Complaint.

**D. Individual Liability**

In their motion for summary judgment, Defendant Cain asserted that he cannot be held personally liable for causes of action arising under the Ohio Civil Rights Act in Count Two. (R. 27, PageID# 266). Plaintiff disagrees. (R. 28, PageID# 375). As summary judgment in favor of Defendants is appropriate on Count Two, Defendants' arguments on this issue are moot.

20

**V. Conclusion**

For the foregoing reasons, the Defendants' Motion for Summary Judgment (R. 27) is hereby GRANTED in part and DENIED in part. Specifically, summary judgment is GRANTED in Defendants' favor with respect to Count Two (Ohio Civil Rights Act disability claim) and Count Three (FMLA claims), but DENIED in all other respects. Plaintiff's Motion for Partial Summary Judgment (R. 26) is hereby GRANTED to the extent she seeks a legal finding that she was compensated as an hourly wage earner rather than a salaried employee.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: September 30, 2021